BENSON, survivor, &c. *vs.* BOLLES.

Where a *landlord* demised premises for one year at a specified rent, and agreed that if the tenant continued to occupy the premises for *seven years* at the same rent, he would pay him money expended in repairs, to the amount of $50, and a *sub-tenant* surrendered the premises to the landlord *fourteen days* before the expiration of the seven years, paying him the rent up to that day, *it was held*, that the landlord, for the residue of the term, must be considered *quasi* sub-tenant to the original tenant, and that at the expiration of the seven years, he was liable to his tenant for the payment of the $50 expended in repairs.

A party entering into the possession of lands by the consent or permission of a *tenant*, will be considered, in respect to the rights of the landlord, as substituted *in the place* of the tenant by whose permission he enters.

Where a party has a *legal right* to enter into the possession of land, and does in fact enter, the law *presumes* that he entered under such right, and not as a *trespasser*.

Where a judgment of the common pleas in favor of a plaintiff in a cause is reversed in the supreme court with costs, and the plaintiff below is entitled to a *venire de novo*, an award of such writ, *it seems*, should be entered upon the record.

ERROR from the supreme court. On the 2d March, 1821, an agreement was entered into between Bolles on the one part, and Benson & Felthousen on the other, whereby Bolles demised to Benson & Felthousen, from the first day of May, then next, a store house and a building attached thereto, in the city of Schenectaday, at a rent of $100 per year; Benson & Felthousen to alter and repair the buildings to the amount of $50, as should be specified in a separate article, and to occupy for as *many years* as they thought proper, at the rent of $100 per year; Bolles reserving the right to dispossess them after the first year, on paying them the $50 to be expended for repairs; and if Benson & Felthousen occupied the premises for *seven years* from the first term inclusive, Bolles to pay them the said sum of $50 for repairs, but if they wished to leave or withdraw from the premises before the expiration of *seven years* they were to have *no claim* for repairs. In May or June, 1824, one Betts took the premises of Benson & Felthousen, agreeing to pay the rent reserved in the agreement to Bolles, and to take receipts for the same in the names of Benson & Felthousen.

Betts remained in possession until the 16th April, 1828, being *fourteen days before the expiration of the seven years*, when he sold his stock of goods to *Bolles* the landlord, and abandoned the store, which was thereafter occupied by Bolles. Betts paid the rent up to the 16th April, 1828. Some of his receipts for the rent were taken in the names of Benson & Felthousen, and some in his own name. Previous to the 16th April, Betts was requested by a partner of one of the plaintiffs to leave Schenectady and come to Albany, and on leaving the store, and previous to the first day of May 1828, he went into business at Albany, in connexion with Felthousen, one of the plaintiffs.

In June, 1828, Benson & Felthousen sued Bolles in a justice's court, in an *action of covenant*, demanding $50 for repairs of the premises, made in pursuance of the stipulation in the agreement, and recovered judgment for the amount demanded. Bolles appealed to the common pleas of Schenectady, and on the trial in that court, the above facts appeared, and also that Bolles had admitted that repairs, in pursuance of the agreement, to the amount of $50, had been made on the demised buildings. The defendant moved for a nonsuit, on the grounds, 1. That the plaintiffs had not occupied the premises seven years; 2. That the defendant had not dispossessed the plaintiffs, or requested them or their sub-tenant to leave the premises; 3d. That the plaintiffs in 1824, and their subtenant in 1828, *before the expiration* of the seven years voluntarily abandoned the premises; 4. That the plaintiffs had not produced the *separate article* in which the repairs to be made were to be specified; 5. That they had not paid rent for the term of seven years; and 6. That they ceased to occupy the premises when Betts went into possession; and at all events, that they so ceased when Betts took receipts in his own name. The court refused the nonsuit, and charged the jury that the matters for them to pass upon were, 1. Whether, from the evidence, it appeared that repairs had been made to the amount of $50; 2. Whether the plaintiffs had *abandoned* the premises, and if the jury found that they had not abandoned, then 3. Whether the defendant entered into the demised premises under the power reserved in the lease: if they found that such repairs were made, and that the plaintiffs had not abandoned,

or that the defendant had entered under the power reserved by the lease, they would find for the plaintiffs, otherwise for the defendant, The jury found a verdict for the plaintiffs, with $53,78 damages, on which the common pleas gave judgment. The defendant having excepted to the opinions of the court, removed the record and bill of exceptions into the *supreme court*, where the judgment of the *common pleas* was reversed. Whereupon the plaintiffs sued out their writ of error to this court.

The following was the opinion of the supreme court delivered by Mr. Justice SUTHERLAND :

By the terms of the lease from Bolles to Flethousen & Benson, which was for one year from May 1st, 1821, the lessees were to expend $50 in altering and repairing the demised premises. And the lessor covenanted, if the lessees should possess and occupy the premises for the term of seven years from the commencement of the lease, that he would repay to them the said sum of $50, so laid out in repairs. He also agreed that they might occupy the premises as long as they thought proper, at the same rent of $100 per annum ; reserving, however, to himself, the privilege of dispossessing them, after the expiration of one year, upon request, and upon paying them the $50 which they were to expend in improvement. The lessees also expressly agreed that they were to have no claim upon the lessor for repairs, if they should *voluntarily* leave or or withdraw from the premises within the seven years. It was a condition precedent therefore to any right of action by the lessees, upon the covenant of the lessor to repay the $50, that they should have occupied the premises for seven years, or should have left them, within that period, at the request of the lessor. Admitting the possession of *Betts*, to have been the possession of the lessees within the meaning of the covenant, it is conceded that he left the premises on the 16th April, 1828, fourteen days before the expiration of seven years, and that he paid the rent only up to the 16th April, and that neither he nor the lesssees ever paid or tendered the rent for

ALBANY,
Dec. 1831.

Benson
v.
Bolles.

the residue of the term ; there is therefore neither an actual or constructive possession during that period.

The only inquiry then is, whether Betts was dispossessed by, or left the premises at the request of the lessor, within the meaning of the lease.

Betts testified, that on the 16th April, 1828, he sold out his remaining stock of goods to the lessor Bolles, who thereupon took possession of them and of the store ; that nothing was said at this time with regard to the future occupation of the store ; that the plaintiffs knew nothing of the arrangement until after it was completed, and never requested the witness to give up the store to the defendant. On his cross-examination he stated, he first suggested to the defendant, that he the witness, wished defendant to buy his goods ; that the defendant did not at the time the witness left the store, or at any other time, request the witness to leave it, nor did he ever hear the defendant request the plaintiffs to leave it ; that the defendant purchased the goods of the witness, who then abandoned the store, which was therefore occupied by the defendant ; that at the time the witness left the store, nothing was said about the lease or the claims for repairs. This evidence certainly does not establish the fact that the defendant dispossessed the plaintiffs or their tenant, or requested him to leave the premises under the power reserved to the defendant in the lease ; the contingency contemplated by the lease, was the shortening of the plaintiffs' term within seven years, by the authoritative interference of the defendant ; in that event he was to pay the plaintiffs what they had expended in repairs. If the plaintiffs, at the end of the second and third year, had sold out their goods to the defendant, and had left the premises without any new arrangement, I apprehend it would not have been imagined that they could recover upon the covenant. The principle is the same, whether more or less of the seven years remained, at the time when the tenant of the plaintiffs surrendered the possession. The question is, whether that surrender was voluntary, or whether it was exacted by the defendant, under the power reserved in his lease. The evidence upon this point, given by the plaintiffs themselves, is clear and unequivocal. It shows, beyond all question, that Betts' re-

moval was entirely voluntary, not required or suggested in any manner by the defendant. There was no contradictory evidence; there was nothing to submit to the jury. The plaintiffs failed to establish the fact upon which alone they could recover, and ought to have been nonsuited. Judgment reversed with costs.

The judgment *entered* on the record in the supreme court was for *restitution* of all things lost by occasion of the judgment in the common pleas, and that Bolles recover of Benson & Felthousen $173,99, for he costs of the prosecution of the writ of error, without awarding a *venire de novo*.

The case was argued by

*P. Gansevoort & M. T. Reynolds*, for the plaintiffs in error.

*A. L. Linn & A. C. Paige*, for the defendant in error.

The following opinion was delivered :

By the CHANCELLOR. If the judgment of the supreme court was right in substance, it seems to be incorrect in point of form. The judgment being reversed on a bill of exceptions taken at the trial, the plaintiffs were probably entitled to a *venire de novo*, to enable them, if possible, to supply the deficiency in their proofs, on a new trial. But as this question was not raised before the supreme court, and was probably a mere mistake in making up the record there, it forms no ground for reversing the judgment in this court.

On a careful investigation of this case upon the merits, however, I have arrived at the conclusion that the judgment in the court of common pleas was correct, and that it ought to have been affirmed in the supreme court. The decision of the latter court appears to proceed upon the ground that the abandonment of the premises by Betts on the 16th of April, 1828, amounted to an abandonment by the plaintiffs, and destroyed their rights under the agreement. It is very evident, however, that such was not the understanding of the parties, or the

effect of the several agreements for the leasing and sub-letting of the premises. The agreement between the plaintiffs and the defendant was for a holding from year to year, so long as the plaintiffs thought proper to continue their tenancy, subject to the right of the landlord to terminate the lease, at any time after the expiration of the first year, by paying the $50 laid out in alterations and repairs. The provision in the lease was that the lessees might occupy the premises, not for so long a period, but *for so many years* as they should think proper, showing clearly that they were to occupy as *tenants from year to year* subject to the right of the defendant to terminate the lease at his own will. Having continued tenants of the premises for eleven and a half months of the last year, they were bound to pay rent for the whole year; and were therefore constructively in the possession, by themselves or their sub-tenant, during the whole of that year, unless the defendant has terminated the tenancy by an entry under the power reserved to him in the lease.

Although Betts had the right to occupy the premises, and was bound to pay rent, for the benefit of the plaintiffs, at the same rate which they had agreed to give, yet it is evident from his testimony that he was only *sub-tenant* to them. He refused to take an assignment of the lease, so as to give him the right to terminate the same before the expiration of the seven years, or to entitle himself to the $50. He paid the rent to the defendant, but he did so as the agent of the plaintiffs, according to the understanding between the parties, and for a part of the time he actually took the receipts for the rent in the names of the plaintiffs. He was therefore a mere sub-lessee, without power to deprive the plaintiffs, his immediate landlords, of any of their rights. If the defendant, therefore, went into possession of the premises by the consent or permission of Betts, and not under the authority reserved in the agreement, he was substituted in the place of Betts as the sub-tenant of the premises for the remainder of the term; and his possession was the possession of the plaintiffs for the residue of the seven years, under the original agreement. See *Piggott* v. *Mason*, 1 Paige's R. 415. The payment of the rent, or the offer to pay it, was not a condition precedent to the recovery of the fif-

ty dollars. If any rent was due, it could only avail the defend-
ant by way of offset. But here was no rent due, even if the
term continued until the expiration of the year. It was all
paid up to the 16th of April, when the defendant took posses-
sion ; and if he took possession under Betts, as the sub-tenant
of the plaintiffs, he was liable to the plaintiff as their sub-ten-
ant, for precisely the same amount as they would have been
liable to him under the original lease ; and as Betts' agree-
ment was to pay the rent to the original landlord, for the ben-
efit of the plaintiffs, the law in this case would make the ap-
plication, to prevent circuity of action.

If the defendant did not take possession of the premises by
the consent or permission of Betts, as the sub-tenant of the
plaintiffs for the residue of the term, he must have entered,
either as a trespasser, or by virtue of the power reserved to him-
self in the lease; and where a party has a legal right to en-
ter into possession of land in one character, or under one title,
the law will presume that he entered in that character, and
under that title, and not in the character of a mere trespasser.
Matthews on Pres. Ev. 26. 2 Coke Litt. 232.

In any view of this case, therefore, I think the plaintiffs
were entitled, both legally and equitably, to the $50, and that
the only objection to the charge of the court of common pleas
was, that it was more favorable to the defendant than it should
have been. I think the facts of the case would have justifi-
ed the court in telling the jury that they ought to find a ver-
dict for the plaintiffs, if they believed the repairs had been made
according to the agreement.

The objection that the plaintiffs did not produce the *separate
article*, relative to the repairs, is wholly untenable, and I pre-
sume was so considered by the supreme court. There is no
evidence that any written article was ever made relative to the
repairs, other than that contained in the agreement itself. It
evidently means, such alterations and repairs, to the amount
of $50, as should thereafter be agreed upon between the par-
ties, or specified by the landlord; and I think it may fairly be
inferred from the evidence, that the alterations and repairs had
been fixed upon by a parol arrangement between the parties,

ALBANY,
Dec. 1831.

Benson
v.
Bolles.

as the defendant admitted they had been made by the plaintiffs, according to the agreement.

If the court should concur with me in opinion, the judgment of the supreme court must be reversed, and that of the common pleas affirmed, with the costs of the surviving plaintiff in error, both in this and in the supreme court.

On the question being put, *Shall this judgment be reversed?* the members voted as follows :

In the *affirmative*—The CHANCELLOR, and *Senators* FULLER, LYNDE, MATHER, MAYNARD, REXFORD, SANFORD, SHERMAN, WARREN and WESTCOTT, 10.

In the *negative*—*Senators* ALLEN, ARMSTRONG, BRONSON, CONKLIN, DEITZ, GERE, McLEAN, TALLMADGE and THROOP, 9.

Whereupon the judgment of the supreme court was *reversed,* and the judgment of the common pleas *affirmed,* and the defendant in error directed to pay the costs both in the supreme court and in this court.