EMIL A. RITZLER *et al.*, Respondents, *against* EMIL RAETHER, Appellant.

(Decided December 5th, 1881.)

A lessee sub-let part of the demised premises, and the sub-lessee assigned his sub-lease to the plaintiffs, who entered into possession. Immediately afterwards the original lessee surrendered his lease to the chief landlord, who accepted the surrender, and leased the entire premises to new tenants. They, assuming to be the landlords of the plaintiffs, demanded an increased rent for the portion of the premises occupied by the latter, which, in order to keep possession, the plaintiffs paid. *Held*, that this gave no right of action to the plaintiffs against the original lessee.

APPEAL from a judgment of a district court in the City of New York.

The facts are stated in the opinion.

*Rose & Putzel*, for appellant.

*Charles D. Metz*, for respondents.

VAN HOESEN, J.—Raether was the tenant of Ryder, the owner of the land. He sub-let a portion of the premises to one Kohlhepp, who assigned his sub-lease to the plaintiffs. There is a conflict in the testimony as to whether Raether consented to the assignment by Kohlhepp to the plaintiffs, but the justice found, and I think correctly, that he did consent in the course of a day or two after the plaintiffs had entered into possession of the premises which they acquired by the assignment made to them by Kohlhepp; Raether went to his landlord, Ryder, surrendered his lease to him, and Ryder, accepting the surrender, made a lease to Pratt & Herrick of the premises which Raether surrendered. Pratt & Herrick came to the plaintiffs, and told them that they could not remain unless they paid them thirty-five dollars per month instead of twenty-five, which was the rent mentioned in the sub-lease from Raether to Kohlhepp. The plaintiffs said that they were not prepared to do that, but that, in order to keep possession, they would pay the extra ten dollars until they ascertained what their rights were. The plaintiffs paid Pratt & Herrick, who assumed to be their landlords, rent at the rate of thirty-five dollars per month, for several months, and they then brought this action against Raether for "a breach of the contract of letting," as their oral complaint describes their cause of action. The justice found in favor of the plaintiffs, and awarded them $120 damages, intending, I suppose, to give them the sum which they will in the course of a year pay to Pratt & Herrick in excess of the rent which the sub-lease, assigned to them, obliged them to pay.

Exactly what the pleader meant by calling his supposed claim against Raether "a breach of the contract of letting," I am unable to conjecture. Was it that he supposed that there was a breach of the covenant for quiet enjoyment? Possibly. But, when was it held that a landlord—and such was Raether's position—broke the covenant for quiet enjoyment when he sold

an estate which was demised to a tenant? A landlord may, without offense, sell his land, even though it be in the hands of a lessee ; for it does not follow that the tenant will suffer because the reversion becomes the property of a stranger. If the landlord be himself a lessee, how does it prejudice his under-tenant, if he assigns the original lease to a third party, or surrenders it to the chief landlord? Why is it the duty of the lessee to remain the tenant of his landlord during the entire term of any under-lease that he may make? If there be no such duty, then on what is the plaintiff's right of action founded? This action has grown out of a misconception of the relative rights of the parties. The first inquiry that presents itself, is, had Raether a right to sub-let? Though the lease under which he held from Ryder is not attached to the return, it must be assumed that he had such a right, for no question of it was made in the court below. If he could sub-let, what were the rights of the under-tenant? Such as the sub-lease conferred upon him, provided that the sub-lease did not diminish the rights of the original landlord, or conflict with the original lease. If, then, an under-tenant acquires an interest in the land by virtue of the sub-lease, how can he be deprived of it by any act or omission of his lessor that does not derogate from the rights of the chief landlord? If the tenant fails to pay rent, the chief landlord may dispossess him, and the under-tenant with him, unless the under-tenant, to protect his possession, pays the rent. There may be other breaches of duty on the part of the lessee that will warrant the landlord in evicting him, and his under-tenants also, but, unless it be necessary or proper for the protection of his own rights, the original landlord cannot lawfully interfere with the possession of the under-tenant, or disregard the rights conferred upon him by the sub-lease. If there be a sub-lease, and the landlord is aware of it, why should he be permitted to disregard it? In this case, it is shown that the plaintiffs were in possession and occupation when Raether made, and Ryder accepted, the surrender. It was Ryder's duty, therefore, to ascertain exactly what the rights of the plaintiffs were ; for it is now, as it long has been, the law, that the purchaser of an estate in possession

of tenants, is chargeable with notice of the extent of their interests as tenants; for having knowledge of the tenancy, he is bound to inform himself of the conditions of the lease (4 Kent marg. p. 179). Ryder, in accepting the surrender, occupied the position of any stranger making a purchase of the premises, and what would be notice to a stranger, is notice to him. Pratt & Herrick also had notice that the plaintiffs were in the actual occupancy of the premises, and they, like Ryder, are bound to regard the rights which the plaintiffs possessed under their sub-lease. Neither Ryder nor Pratt & Herrick were justified in disturbing the plaintiffs in their possession, or in demanding any greater rent than was stipulated for in the sub-lease. Ryder may well be regarded as the assignee of Raether, and Pratt & Herrick as the assignees of Ryder, but in any event, the obligations and duties of the plaintiffs were not increased by the transfers (*Benson* v. *Bolles*, 8 Wend. 180, 181). The plaintiffs, without due consideration, recognized the unfounded claim of Pratt & Herrick, and needlessly threw their money away in paying them the ten dollars extra per month. But this gave them no right of action against Raether.

It is somewhat singular that until within the past few years there were no authorities on this question to be found in the books. When Taylor published the third edition of his work on Landlord and Tenant, the text of section III. read, "It is said that the interest of an under-lessee cannot be defeated by the mesne lessee surrendering his estate in the premises to his lessor." For this he refers to no authority. Since the date of that edition, the decisions have been numerous on the point, and among them are the following cases: *Eten* v. *Luyster* (60 N. Y. 252); *Allen* v. *Brown* (5 Lans. 280); *Mellor* v. *Watkins* (L. R. 9 Q. B. 400); and *Great Western R. R. Co.* v. *Smith* (L. R. 2 Ch. D. 235).

By way of compensation to the plaintiff, I call the attention of his counsel to some authorities which may mitigate the regret that he may feel at the reversal of this judgment; the authorities are Smith's Landlord and Tenant, citing Shepherd's

Touchstone, 301; *Webb* v. *Russell* (3 T. R. 393), and *Burton* v. *Barclay* (7 Bing. 751).

The judgment must be reversed.

J. F. DALY, J., concurred.

Judgment reversed, with costs.